```
┌─────────────────────────────────┐
│ USDC SDNY                        │
│ DOCUMENT                         │
│ ELECTRONICALLY FILED             │
│ DOC #:_____           │
│ DATE FILED: _11/17/20__          │
└─────────────────────────────────┘
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

John William Cook, Jr.,

                   Petitioner,

       –v–

United States,

                   Respondent.

---

13-cr-777-1  (AJN)
18-cv-4271 (AJN)

OPINION & ORDER

ALISON J. NATHAN, District Judge:

      In 2014, a jury convicted Defendant John Cook of conspiracy to distribute heroin and cocaine and possession of a firearm in connection with a narcotics offense.  Cook now brings a petition for habeas corpus challenging his conviction on several grounds.  He primarily contends that he received ineffective assistance of counsel before and during trial and that the Court violated his due-process rights at sentencing.  For the reasons that follow, Cook's petition for habeas corpus is DENIED.

## I.      BACKGROUND

### A.  Cook's Underlying Conduct

      The charges in this case stem from Cook's involvement in the planning and execution of what he believed would be an armed robbery.  In 2013, agents from the Drug Enforcement Agency directed Jose Rodriguez, a Government informant, to offer Cook an opportunity to commit a drug robbery.  *See* Trial Tr. at 114–20, 260.  Rodriguez and Cook had a long history— years before, Rodriguez had met Cook in prison, and they had sold heroin and cocaine together for several months.  Trial Tr. at 260–268.  With the DEA's support, Rodriguez had identified

Cook as a "sting" target because Cook had told him that he had robbed rival drug dealers in the past.  Trial Tr. 266–67.  The purported robbery was fictional.  *See* Trial Tr. at 268 (Rodriguez noting that this was "[n]ot a real robbery" and was instead just a "story").

At the DEA's direction, Rodriguez told Cook that the robbery would involve about 18 kilograms of cocaine and 5 kilograms of heroin.  Trial Tr. at 126.  Cook quickly told Rodriguez that he was "interested" and said "once you [Rodriguez] find out the details, let me know."  Trial. Tr. at 119; *see also* Trial Tr. at 268.  Cook soon began putting together a team to assist in the robbery and enlisted two men who would later become his co-defendants, Isaiah Wilson and Tariq Gill.  Trial. Tr. at 140, 160.  At trial, the Government presented evidence of six recorded meetings and 24 recorded telephone calls between Rodriguez and Cook.  For example, in one early meeting, Cook noted that he had participated in robberies similar to the one that they were planning: "I could hold three n*****" because "I do this . . . I did this a lot of times, man."  Government Exhibit 306-T at 3.[1]  Cook also made clear that he planned to use violence to facilitate the robbery: "If you go in there aggressively, yeah, and let them n****** know you mean business from the door, . . . all that shit is gonna stop."  *Id.*  He added that "I could get three n****** by myself.  With the ratchet, if I'm going to rob ****, I don't give a **** if they got ratchets or not.  I got three by myself."  *Id.*

Later meetings involved not just Cook and Rodriguez, but also one of Cook's recruits, Gill.  During one meeting, Gill made clear that he would be armed during the robbery and would have no qualms about using his firearm to kill others: "I don't know how itchy they is," Gill said to Cook and Rodriguez, adding, "You feel what I'm saying? I'm itchy."  GX 311-T at 32.  When Rodriguez described the victims as "cowboys," Cook chimed in, "They outta here."  *Id.*  The

---

[1] The Government's exhibits are publicly available in the appellate record.  *See United States v. John Cook*, Second Circuit Dkt. No. 14-4753.

three men also discussed whether they should kill the victims before or after stealing the drugs. *Id.* At later meetings, Cook strategized how the men would sell the large quantities of cocaine and heroin they were planning to steal, noting that they would have to break up the haul to prevent identification of their source. GX 324-T at 18–20.

The robbery was scheduled for September 4, 2013. *See* GX 326-T at 1–3. On that day, Cook met with Gill, Rodriguez, and Wilson and discussed details of the robbery. *See* GX 330-T. Cook confirmed that several of the men, including himself, were armed and ready to use their firearms. *See id.* at 9–10 (Cook noting that his firearm was "Army edition" and that he was "about to use that ****, that **** is gone"). But as noted, the robbery was fictional. *See* Trial Tr. at 268. So when Cook and his co-conspirators reached to the location of the purported robbery, they were arrested by federal agents. At the time of his arrest, Cook had at his feet a loaded .45 caliber handgun. Trial Tr. 165–175. Cook's co-defendants also had multiple loaded firearms, and one of them was wearing a bulletproof vest. *Id.*

**B. Cook's Trial, Appeal, and Petition**

In October 2013, Cook and two co-defendants, Wilson and Gill, were indicted on three counts. The Government charged Cook with conspiracy to distribute cocaine and heroin (Count 1), conspiracy to commit Hobbs Act robbery (Count 2), and unlawful possession of a firearm in connection with the drug-trafficking offense in Count 1 and in connection with the crime of violence in Count 2 (Count 3). *See* Dkt. No. 10. Cook's co-defendants pled guilty, and Cook proceeded to trial.

After a week-long trial in April 2014, the jury convicted Cook on Counts 1 and 3. *See* Trial Tr. 688–90. Soon after, Cook moved to set aside the verdict and asked the Court to enter a judgment of acquittal. *See* Dkt. No. 99. The Court rejected Cook's motion. *See United States v.*

*Cook*, No. 13-cr-777 (AJN), 2014 WL 12681367 (S.D.N.Y. Nov. 17, 2014).  The Court

subsequently sentenced Cook to 240 months' imprisonment and five years of supervised

release.[2]  *See* Dkt. No. 111.

After sentencing, Cook appealed his conviction.  *See* Dkt. No. 112 (notice of appeal).  In

February 2017, the Second Circuit affirmed Cook's conviction and sentence.  *See United States

v. Cook*, 674 F. App'x 56, 57 (2d Cir. 2017).  Cook appealed again, but the Supreme Court

denied his petition for certiorari.  137 S. Ct. 2142 (Mem) (2017).

Following the Second Circuit's decision and the Supreme Court's denial of certiorari,

Cook filed a petition for habeas corpus.  *See* Dkt. No. 61.  He challenges his conviction on two

primary grounds: ineffective assistance of counsel and a due-process violation at sentencing.  His

petition is now fully briefed and before the Court.

## II.  COOK'S PETITION FOR HABEAS CORPUS IS DENIED

### A.  Cook Fails to Demonstrate Ineffective Assistance of Counsel

#### 1.  Legal Standard

A petitioner seeking to attack his sentence based on ineffective assistance of counsel

must: (1) show that counsel's performance fell below "an objective standard of reasonableness"

under "prevailing professional norms," and (2) "affirmatively prove prejudice," namely,

demonstrate that "there is a reasonable probability that, but for counsel's unprofessional errors,

the result of the proceeding would have been different."  *Strickland v. Washington*, 466 U.S. 668,

693–94 (1984).  When analyzing a claim that counsel's performance did not meet constitutional

standards, "judicial scrutiny of counsel's performance must be highly deferential."  *Id.* at 689.

The Court "must indulge a strong presumption that counsel's conduct falls within the wide range

---

[2] The Court sentenced Gill to a term of 224 months' imprisonment and Wilson to a term of 216 months' imprisonment.

of reasonable professional assistance." *Id.* "In assessing the attorney's performance, a reviewing court must judge his conduct on the basis of the facts of the particular case, 'viewed as of the time of counsel's conduct,' and may not use hindsight to second-guess his strategy choices." *Mayo v. Henderson*, 13 F.3d 528, 533 (2d Cir. 1994) (quoting *Strickland*, 466 U.S. at 690). Constitutionally inadequate performance may be established if a habeas petitioner "shows that counsel omitted significant and obvious issues while pursuing issues that were clearly and significantly weaker." *Clark v. Stinson*, 214 F.3d 315, 322 (2d Cir. 2000). Nonetheless, "[t]he failure to include a meritless argument does not fall outside the wide range of professionally competent assistance to which [a] [p]etitioner [i]s entitled." *Aparicio v. Artuz*, 269 F.3d 78, 99 (2d Cir. 2001) (quotation marks and citations omitted). Simply disagreeing with counsel's trial strategy is not enough on its own to support an ineffective assistance of counsel claim. *See United States v. Sanchez*, 790 F.2d 245, 253 (2d Cir. 1986) ("A defendant . . . not claim ineffective assistance of counsel merely because . . . he thinks counsel's trial strategy was inadequate."); *accord Klein v. United States*, 2012 WL 5177493, at *5 (S.D.N.Y. Oct. 17, 2012) ("[Petitioner's] arguments are insufficient to support a claim of ineffective assistance of counsel because they ultimately allege nothing more than [the petitioner's] disagreement with his former counsel's trial strategy."); *United States v. Spigelman*, 2008 WL 84539, at *2 (S.D.N.Y. Jan. 8, 2008) ("Mere disagreement with an attorney's strategy is not enough for a [petitioner] to prevail on an ineffective assistance claim.").

Even if an attorney's performance was objectively unreasonable, a habeas petitioner must also demonstrate prejudice. *See Strickland*, 466 U.S. at 687. To do so, a "defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to

undermine confidence in the outcome." *Id.* at 694.  In assessing prejudice, courts review the

record to determine the impact of the alleged ineffectiveness within the context of the entire trial.

*See Berghuis v. Thompkins*, 130 S. Ct. 2250, 2264 (2010) ("In assessing prejudice, courts 'must

consider the totality of the evidence before the judge or jury.'") (quoting *Strickland*, 466 U.S. at

695).  In other words, the "question is whether there is a reasonable probability that, absent the

errors, the fact finder would have had a reasonable doubt respecting guilt."  *Id.* at 694.

### 2.  Cook Has Not Met His High Burden

Cook raises several theories for why his counsel's assistance was ineffective.  *First*, Cook

alleges that his counsel failed to challenge a purported violation of Federal Rule of Criminal

Procedure 6(f).  *See* Petition at 3 (Ground One); *id.* ¶¶ 21–27, ¶ 83 (Ground Four).  Rule 6(f)

provides that a grand jury (or its foreperson or deputy foreperson) "must return the indictment to

a magistrate court in open court."  Cook claims that his "counsel could have but did not move for

dismissal of [his] indictment on the grounds that the record failed to demonstrate that it was

returned in open court."  Petition ¶ 23.

Beyond these conclusory allegations, however, Cook presents no colorable argument that

there was a violation of Rule 6 in this case.  Cook puts forward no evidence suggesting that the

indictment against him was not returned in open court.  To the contrary, as the Government

recognizes, "the indictment itself bears all indicia of propriety."  Dkt. No. 166 6–7.  The

indictment is stamped and dated October 8, 2013, and was filed on that day.  Dkt. No. 10 at 1,

10.  Both the grand jury foreperson and the then-United States Attorney for the Southern District

of New York, Preet Bharara, signed the indictment.  *Id.* at 6.  And the indictment bears the

handwriting and signature of the presiding magistrate, Magistrate Judge Gabriel W. Gorenstein.

*Id.* at 7. Judge Gorenstein wrote on the indictment itself, "10/8/19 – Filed Indictment.  Case

assigned to Judge Nathan[.]". *Id.* He then signed the indictment. *Id.* In addition, the public docket contains the following entry for this date: "INDICTMENT FILED as to John William Cook, Jr (1) count(s) 1, 2, 3, Tariq Gill (2) count(s) 1, 2, 3, Isaiah Wilson (3) count(s) 1, 2, 3. (jbo) (Entered: 10/09/2013)." Dkt. No. 10. Contrary to Cook's conclusory allegations, therefore, the record in this case does not reveal any violation of Rule 6(f). The Court thus cannot conclude, as Cook urges, that his counsel was constitutionally ineffective for failing to make a motion to dismiss his indictment on this basis, or that he was prejudiced by the failure to bring such a motion. *See Mittal v. United States*, No. 02-cv-8449 (JGK), 2005 WL 2036023, at *7 (S.D.N.Y. Aug. 24, 2005) ("[T]here is no basis for arguing that under prevailing professional standards, defense counsel must investigate the form of grand jury proceedings where an indictment is facially valid and free of substantive defects. The reasonableness of defense counsel's conduct . . . is confirmed by the Supreme Court's rule allowing the district court to dismiss an indictment only where prejudice can be shown.").

*Second*, Cook argues that his counsel failed to advise him to forego a jury trial and instead consent to a bench trial on stipulated facts. *See* Petition ¶¶ 62–81. Reply Br., Dkt. No. 167, at 7. Cook contends that had he received a bench trial on stipulated facts, his Guidelines calculation would have been lower, as he would have received a reduction on his offense level for acceptance of responsibility. Petition ¶ 66; U.S.S.G. § 3E1.1(a) ("If the defendant clearly demonstrates acceptance of responsibility for his offense, decrease the offense level by 2 levels."). To start, as another court in this district has explained, "[o]bviously, pursuing a bench trial does not demonstrate any acceptance of responsibility." *Ortega v. United States*, No. 02-cr-348 (LTS) (GWG), 2012 WL 2478277, at *10 (S.D.N.Y. June 27, 2012), *report and recommendation adopted*, 2013 WL 81330 (S.D.N.Y. Jan. 8, 2013). Therefore, defense counsel

was not unreasonable in failing to advise Cook to pursue a bench trial, and Cook was not prejudiced by this decision, as a bench trial alone would not have changed his Guidelines calculation.

Instead, Cook's argument turns on his contention that he would have "stipulated" to facts at this bench trial. *See* Petition ¶ 64; Reply Br. at 7. To be sure, "the decision to seek a reduction in sentence for acceptance of responsibility where a defendant stipulates to the facts of his guilt has received support from courts in a number of instances." *Rengifo v. United States*, No. 09-cr-109 (JSR) (GWG), 2015 WL 5711137, at *9 (S.D.N.Y. Sept. 28, 2015), *report and recommendation adopted in part sub nom. Palacios-Rengifo v. United States*, 2016 WL 47519 (S.D.N.Y. Jan. 4, 2016) (collecting out-of-circuit cases); *see, e.g.*, *Adams v. Peterson*, 968 F.2d 835, 842 (9th Cir. 1992) ("There may be a variety of strategic reasons for proceeding by a stipulated facts trial, ranging from preservation of issues for appeal to *attempting to mitigate the sentence by a partial acceptance of responsibility* or by controlling the evidence presented to the sentencer." (emphasis added)). Yet even where a defendant stipulates in this manner, such a reduction is "certainly not guaranteed." *Rengifo*, 2015 WL 5711137, at *9 (citing *United States v. Seidling*, 737 F.3d 1155, 1162 (7th Cir. 2013). Cook points to no case, and the Court finds none on independent review, suggesting that counsel can be constitutionally ineffective for not presenting her client with this alternative to a jury trial in a case like this one, in which it was the strategy of both defense counsel and the Defendant to vigorously contest the facts. As the Second Circuit noted on appeal, Cook at trial "attempted to downplay his willingness to use violence and . . . attempted to shift blame for his conduct to the government's informant." 674 Fed. Appx. at 60. Indeed, Cook continues to raise factual challenges in his petition for habeas

corpus—for example, he seeks to relitigate his entrapment defense, which requires him to dispute the Government's factual allegations.

Moreover, Cook notes that if he had stipulated to facts for purposes of a bench trial, he "would still be able to raise *true and non-frivolous* challenges to his . . . relevant conduct, to his criminal history, to the facts allegedly supporting the foregoing as well as to other sentencing factors such as whether he was entitled to a downward departure or downward variance or adjustments for mitigating factors."  Petition ¶ 66.  Cook has also thus failed to demonstrate prejudice.  Even if he had stipulated to facts, Cook claims that he still would have raised various factual challenges at sentencing—including with regard to his underlying conduct—and therefore he has not demonstrated a "reasonable probability" that the Court would have applied the acceptance-of-responsibility reduction.  *See Kovacs v. United States*, 744 F.3d 44, 51 (2d Cir. 2014).  Ultimately, on this record, there is no basis to conclude that defense counsel was constitutionally deficient in failing to advise the Defendant to seek a trial on stipulated facts, as he has at all stages of this litigation disputed myriad material facts.

*Third*, Cook contends that his counsel failed to investigate the options surrounding his plea, failed to negotiate a favorable plea agreement, failed to advise him fully of his options, and misadvised him of the risks involved with proceeding to trial.  Petition ¶¶ 28–60.  He therefore argues that his plea of not guilty, and decision to proceed to trial, "was not a voluntary and intelligent choice among the alternative courses of action open to him."  *Id.* ¶ 55.  However, the record in this case belies Cook's conclusory assertions.  Specifically, at the final pretrial conference, held on April 14, 2014, the Court extensively questioned both defense counsel and the Defendant himself on the details of two plea offers made by the Government, including the stipulated Guidelines ranges in those offers, and the potential sentencing exposure the Defendant

faced from proceeding to trial.  *See* Dkt. No. 61.  The Court established that the Government had

extended two plea offers to the Defendant.  *Id.* at 3.  Defense counsel then confirmed that he had

discussed with the Defendant these plea offers and the sentencing exposure Cook would face if

he accepted them.  *Id.* at 5.  Defense counsel further stated that he had not "ma[d]e a

recommendation to the defendant as to whether he should accept or reject the offers."  *Id.*  The

Court then confirmed with the Defendant that he had not taken any "drugs, medicine or pills in

the last 24 hours" and that his mind was "clear" at the hearing.  *Id.* at 6.  Cook responded

affirmatively to both questions.  *Id.*  Cook then confirmed that he had heard the representations

made by the Government and defense counsel, that defense counsel's "account of his

discussions" regarding the plea negotiations with Cook was accurate, that the plea offers

described by the Government were in fact provided to him, that he did discuss those offers with

his attorney, and that he himself "reject[ed] those plea offers."  *Id.*

      Yet in his petition, Cook directly undercuts his representations at the April 2014

conference.  For example, he argues that he failed to understand the sentencing exposure he

faced if he had accepted the plea agreements.  *See* Petition ¶ 58.  And he repeatedly states that

"[t]he advice from counsel regarding whether to plead guilty, nolo contendere, or not guilty was

so incorrect and so insufficient that it undermined Mr. Cook's ability to make a voluntary and

intelligent choice among the alternative courses of action open to him."  *Id.* ¶ 53.

      The Supreme Court has long held that "[s]olemn declarations in open court carry a strong

presumption of verity.  The subsequent presentation of conclusory allegations unsupported by

specifics is subject to summary dismissal . . . ."  *Blackledge v. Allison*, 431 U.S. 63, 74 (1977)

(citing *Machibroda v. United States*, 368 U.S. 487, 495–96 (1962)).   The Second Circuit has

thus made clear that testimony in a plea allocution "carries a strong presumption of accuracy"

and district courts do not, "absent a substantial reason to find otherwise, abuse [their] discretion in discrediting later self-serving and contradictory testimony as to whether a plea was knowingly and intelligently made" or rejected. *United States v. Juncal*, 245 F.3d 166, 171 (2d Cir. 2001); *accord United States v. Hernandez*, 242 F.3d 110, 112–13 (2d Cir. 2001) (per curiam). Here, Cook offers only self-serving and conclusory allegations in support of his petition, and puts forward no evidence that would warrant the Court setting aside his sworn statements at the April 2014 conference regarding the knowing and voluntary nature of his refusal to accept the Government's two plea offers. *See* Dkt. No. 61 at 3–6. Cook has therefore not met his burden to show constitutionally ineffective assistance of counsel for these reasons. *See also Mejia v. United States*, 740 F. Supp. 2d 426 (S.D.N.Y. 2010) ("A defendant's bare allegations in a 2255 petition cannot overcome his contrary statements under oath during a plea allocution. . . .").

Moreover, Cook's arguments regarding his counsel's purportedly deficient performance during the plea-negotiation process fail to demonstrate *Strickland* prejudice. Under the terms of the plea offers extended by the Government, the Defendant's stipulated Guidelines range would have been 262 to 327 months' imprisonment—significantly above the sentence of 240 months' imprisonment the Court imposed on the Defendant. *See* Dkt. No. 61 at 2; *cf.* Ray*sor v. United States*, 647 F.3d 491 (2d Cir. 2011) (holding that in order for defendant's claim of prejudice with respect to plea offer "to be sufficiently credible to justify a full hearing, it must be accompanied by some 'objective evidence,' *such as a significant sentencing disparity*, that supports an inference that the petitioner would have accepted the proposed plea offer if properly advised.") (emphasis added). Even assuming that defense counsel's advice regarding the Government's plea offers was constitutionally deficient, Cook has not met his burden to demonstrate prejudice. *See Strickland*, 466 U.S. at 693–94.

* * *

Cook raises a slew of other reasons in support of his ineffectiveness claim.  For example, he claims that his counsel "failed to . . . move for suppression of evidence material to [his] conviction and/or sentence," and "failed to investigate or present available, material, exculpatory evidence and testimony at trial."  *See* Petition ¶ 86; *see, e.g.*, *id.* ¶ 88 ("Counsel unprofessionally failed to investigate or present available evidence and legal authority material to the sentencing of Mr. Cook."); ¶ 90 ("Mr. Cook's counsel labored under an actual conflict of interest . . . .").  However, these claims boil down to legal conclusions, and Cook cites no facts to support them.  And even on the Court's independent review, the record does not support these theories, let alone establish prejudice.  *See Bennett v. United States*, 663 F.3d 71, 88 (2d Cir. 2011).  In sum, Cook fails to meet his burden under the *Strickland* framework to demonstrate ineffective assistance of counsel.  *See Strickland*, 466 U.S. at 693–94.

### B.  Cook's Due Process Arguments are Meritless

Next, Cook raises a due-process challenge to his conviction.  Specifically, he argues that when the Court sentenced him, it violated the Fifth Amendment because it "lacked knowledge of the available range of sentencing discretion under applicable law."  *See* Petition ¶ 93.  Though Cook's legal analysis of this claim is cursory, *see id.*, he premises his challenge on two cases.

First, Cook points to the Supreme Court's decision in *Dean v. United States*.  137 S. Ct. 1170 (2017).  There, the Court held that 18 U.S.C. § 924(c), which criminalizes using or carrying a firearm during and in relation to a crime of violence or drug trafficking crime, or possessing a firearm in furtherance of such an underlying crime, does not prevent a sentencing court from considering a mandatory minimum imposed under that provision when calculating an appropriate sentence for the predicate offense.  *Id.* at 1176–78.  But as the Government

recognizes, Gov't Br. at 11, *Dean* is inapt here.  To start, Cook was *acquitted* of the predicate count for which there was no mandatory minimum—the Hobbs Act robbery charged in Count Two—and thus, unlike in *Dean*, this Court did not consider what sentence to impose for the predicate count.  This distinction alone means that *Dean* has no bearing on this case.  Moreover, nothing in the record supports Cook's contention that the Court "lacked knowledge of the available range of sentencing discretion."  Petition ¶ 93.  To the contrary, at sentencing, the Court calculated the Guidelines range applicable to Cook's counts of convictions, recognized that it was no longer bound by the Guidelines calculation, and then considered the § 3553(a) factors at length.  *See* Dkt. No. 119 at 9–14.  The Court exercised its discretion in imposing a sentence of 240 months.  *Id.* at 14.

Second, Cook relies upon the Ninth Circuit's decision in *United States v. Pimentel-Lopez*. 859 F.3d 1134 (9th Cir. 2017).  There, the Ninth Circuit held that district judges may "make a drug quantity finding in excess of that found by the jury in [a] special verdict."  *Id.* at 1140. However, *Pimentel-Lopez* conflicts with the Second Circuit's decision in *United States v. Florez*, 447 F.3d 145, 156–57 (2d Cir. 2006) (affirming court's finding that defendant was responsible for "upwards of 16 kilos" of heroin, even though jury found defendant responsible for between three and ten kilograms).  Indeed, several Ninth Circuit judges dissented from the denial of rehearing en banc in *Pimentel-Lopez* because the ruling created a circuit split and adopted a minority view.  *See* 859 F.3d at 1139 ("Every circuit to consider the issue has held that a sentencing judge may find a higher drug amount than the amount found by the jury, even when the jury's finding sets an upper boundary.  Given that fact, it is difficult to see how the panel's decision does not create a circuit split—one with this circuit alone on an island.").  In short, the

Court is not bound by the Ninth Circuit's decision in *Pimentel-Lopez*, and must instead apply

binding Second Circuit law.  The Court thus also denies Cook's due-process challenge.

### III.   CONCLUSION

The Court has considered Cook's remaining arguments and, even when liberally

construing them, finds them to be without merit.  And Cook is not entitled to a hearing, because

"the files and records of the case conclusively show that the prisoner is entitled to no relief."  28

U.S.C. § 2255(b); *accord Gonzalez v. United States*, 722 F.3d 118, 130 (2d Cir. 2013).  The

Court therefore DENIES Cook's petition for habeas corpus.  The Clerk of Court is respectfully

directed to close the civil docket, Case No. 18-cv-4271, and enter judgment.

Since Cook has not made a substantial showing of the denial of a constitutional right, a

certificate of appealability shall not issue.  *See* 28 U.S.C. § 2253(c)(2).  The Court further finds

pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this Order would not be taken in good

faith and, therefore, in forma pauperis status is denied for the purpose of any appeal.  *See*

*Coppedge v. United States*, 369 U.S. 438, 444–45 (1962).

The Clerk of Court is further ordered to mail a copy of this order to Cook and note that

mailing on the public docket.


SO ORDERED.

Dated: November 17, 2020
        New York, New York

_____
          ALISON J. NATHAN
        United States District Judge

14